IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES E. WILLIAMS, JR.,          :

    Plaintiff,                   :

vs.                              :          CIVIL ACTION 02-0573-BH-B

PRINCE ARNOLD, et al.,           :

    Defendants.                  :


## REPORT AND RECOMMENDATION

This is an action instituted under 42 U.S.C. § 1983 by a Federal prison inmate, proceeding *pro se* and *in forma pauperis*.  This action has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that Defendant Sheriff Prince Arnold and Defendant Chief Jailer Gloria Kennedy denied him proper medical care while he was incarcerated in the Wilcox County Jail ("WCJ").  (Doc. 1 at 5-6; doc. 2 at 2-3).  Plaintiff also alleges that the actions of Defendants Arnold and Kennedy violated the Eighth Amendment prohibition against cruel and unusual punishment, and as relief, Plaintiff seeks compensatory damages in the amount of $30,000.50 from each Defendant, punitive damages in the amount of $10,000.50 from each Defendant, and reimbursement for all costs and expenses incurred as a result of this litigation. (Doc. 2 at 4).

Plaintiff further requests that he be awarded compensation for pro se legal services in the amount of fifty dollars per hour, plus a $1000 retainer fee, as well as for paralegal services in the amount of twenty-five dollars per hour, plus a $500 retainer fee.[1]  (Id.).  Finally, Plaintiff has asked the Court to issue bench warrants for the arrest and seizure of the Defendants in this action.[2]  (Id.).

Defendants Arnold and Kennedy filed an answer (Doc. 16) on November 27, 2002, and a special report (Doc. 22) on January 31, 2003, denying that they violated Plaintiff's constitutional rights and asserting that Plaintiff has failed to state a claim.  Additionally, Defendants have asserted the

---

[1]Plaintiff has requested an award of attorney's fees, however, as a matter of law, a pro se plaintiff cannot recover attorney's fees under 42 U.S.C. § 1988.  Cofield v. City of Atlanta, 648 F.2d 986 (5th Cir. 1981).

[2]As this Court noted in its Order on August 26, 2002, (Doc. 6), although Plaintiff seeks the issuance of bench warrants for the arrest of Defendants pursuant to 18 U.S.C. § 242, this section is a criminal statute for which no private cause of action exists.  Hanna v. Home Ins. Co., 281 F.2d 298, 303 (5th Cir.) ("The sections of Title 18 may be disregarded in this suit.  They are criminal in nature and provide no civil remedies."), cert. denied, 365 U.S. 838, 81 S. Ct. 751, 5 L. Ed. 2d 747 (1961); Dugar v. Coughlin, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (No private cause of action exists for 18 U.S.C. § 242; a plaintiff "can neither sue directly under [it], nor can he use [it] as a predicate for a section 1983 action."); Fundiller v. Cooper City, 578 F. Supp. 303, 306 (S.D. Fla.) (No implied private civil cause of action exists under 18 U.S.C. § 242.), rev'd on other grounds, 777 F.2d 1436 (11th Cir. 1985).

affirmative defenses of sovereign immunity, qualified immunity, statute of limitations, and waiver pursuant to the requirements of the Prison Litigation Reform Act.[3]  (Doc. 16). Plaintiff filed a motion for summary judgment on September 3, 2004, reiterating his original claims.  (Doc. 32).  On March 16, 2005, this Court entered an Order converting Defendants' special report and answer into a motion for summary judgment, and ordering that Defendant's motion along with Plaintiff's motion for summary judgment be treated as cross-motions for summary judgment and as such be exempted from the requirements of Local Rule 7.2.  (Doc. 36).  In accordance with the Court's Order, the parties were afforded an opportunity to respond to the respective cross-motions for summary judgment, and on April 19, 2005, the motions were taken under submission. After careful consideration by the undersigned Magistrate Judge, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendants' motion for summary judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants

---

[3]Defendants contend that Plaintiff's claim is barred because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act.  However, Defendants have failed to put forth any evidence of a state grievance procedure available for Alabama prisoners, as well as any evidence of Plaintiff's failure to comply with such procedure.

Sheriff Prince Arnold and Chief Jailer Gloria Kennedy and against Plaintiff James E. Williams, Jr. on all claims.[4]

<u>I. FACTS</u>

Plaintiff claims that while incarcerated at Wilcox County Jail ("WCJ") during the period of February 23, 1999 through August 10, 2000, he was denied medical care as a result of Defendants' failure to ensure the proper dispensing of the medications prescribed for his health condition, which is

--------------------------------------------------

[4]The decision of this Court in granting Defendants' motion for summary judgment and dismissing all of Plaintiff's claims makes Plaintiff's final motion requesting the appointment of legal counsel **MOOT**. (Doc. 38). Even if the Court were not dismissing this action, the Court notes that Plaintiff has made at least one prior request for appointment of legal counsel which this Court denied. (Docs. 4, 6). As the Court noted previously, in a case such as this, the Court may exercise its broad discretion in making the decision to appoint counsel under 28 U.S.C. § 1915(e)(1). <u>Mallard v. United States Dist. Court for the Southern Dist. of Iowa</u>, 490 U.S. 296, 109 S. Ct. 1814, 104 L. Ed. 2d 319 (1989); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1319-20 (11th Cir. 1999). Such requests are not mandatory except in exceptional circumstances where the complexity of the case or the competence of the plaintiff makes pro se prosecution of the claim fundamentally unfair. <u>See</u> <u>Id</u>.; <u>Steele v. Shah</u>, 87 F.3d 1266, 1270-71 (11th Cir. 1996); <u>Kilgo v. Ricks</u>, 983 F.2d 189, 193-94 (11th Cir. 1993); <u>Poole v. Lambert</u>, 819 F.2d 1025, 1028-29 (11th Cir. 1987); <u>Wahl v. McIver</u>, 773 F.2d 1169, 1174 (11th Cir. 1985). Further, as noted previously, a review of this action reveals no such circumstances. Plaintiff's action is not complex, with only two Defendants and straightforward claims. Moreover, Plaintiff's pleadings impart an understanding of the law as it pertains to his claims and that he is capable of presenting his claims. Therefore, even if this request was not now MOOT, the Court would deny Plaintiff's request.

referenced as Addison's Disease.[5]   (Doc. 1 at 4-5; Doc. 2 at
3).  Plaintiff claims that he has suffered from Addison's
Disease since being diagnosed in 1980, and that he depends on
Florinef and Prednisone, both prescribed medications, to keep
his symptoms under control.  (Doc. 2 at 2).   Plaintiff
contends that upon his incarceration at WCJ, he informed
Defendants of his condition and the required medications for
treatment of his condition, and further advised them that he
would "die without his medications."  (Id.).

According to Plaintiff, while incarcerated at WCJ, the
jailers would periodically fail to give him his medication.
Plaintiff claims that he recorded in a journal (also referred
to as his "Daily Diary") the days on which he failed to
received his medicine, and he has filed a copy of this journal
as an exhibit, along with his motion for summary judgment.

---

[5]Addison's disease is an endocrine or hormonal disorder
that is characterized by weight loss, muscle weakness,
fatigue, low blood pressure, and sometimes darkening of the
skin in both exposed and nonexposed parts of the body.
Addison's disease occurs when the adrenal glands do not
produce enough of the hormone cortisol and, in some cases, the
hormone aldosterone. The disease is also called adrenal
insufficiency, or hypocortisolism.  Addison's Disease: Adrenal
Insufficiency, NIH Publication No. 04-3054 (June 2004)
available at
http://www.niddk.nih.gov/health/endo/pubs/addison/addison.htm.

(Doc. 32, Ex. 18).  Plaintiff avers that he had his mother,
aunt, attorney, and medical doctor to notify Defendants of the
seriousness of his condition.[6] (Doc. 2 at 2).  Plaintiff

_____

[6]Along with Plaintiff's motion for summary judgment, he
has attached a letter from Dr. David Bell, dated January 25,
2000, which states that Plaintiff has suffered from Addison's
Disease for 20 years, and that his medications are extremely
important.  (Doc. 32, Ex. 1).  The letter further states that
Plaintiff should receive his Prednisone and Florinef on a
regular basis, and that "[f]ailure to do so could lead to
severe medical problems including death." (Id.). Plaintiff
also attached a letter dated August 23, 1999, from his mother
to Defendant Kennedy, advising her of Plaintiff's medical
condition, and of the importance of Plaintiff receiving his
medication. (Id. at Ex. 2).  Also attached as exhibits are
notarized letters from Plaintiff's mother and sister, dated
March 4, 2002, in which both aver that they believe Plaintiff
was denied his medication many times, and that each contacted
WCJ in an attempt to make them aware of this denial of
medication. (Id. at Exs. 3 and 4).  Plaintiff's sister
contends that she spoke with Defendant Arnold on more than one
occasion concerning Plaintiff's condition, and that Defendant
Arnold was rude to her. (Id. at Ex. 4).  Also attached as an
exhibit is a letter dated February 1, 2000, from Plaintiff's
aunt to Plaintiff's attorney advising that WCJ was "still
holding some of [Plaintiff's] medicine and he wants you to
take legal action against them." (Id. at Ex. 7).
Additionally, Plaintiff has filed with the Court the
affidavits (although not notarized) of Plaintiff's aunt, Annie
Carol Fultz, and Plaintiff's common law wife, Melinda Baughn,
dated May 2004, in which each declares that she was aware of
the problem with the medications and that they both contacted
WCJ, as well as Plaintiff's attorney on numerous occasions
regarding the problem. (Id. at Exs. 8 and 9). Plaintiff has
submitted copies of several letters written by himself to his
attorney, W. Donald Bolton, Jr. (Id., Exs. 13, 15, and 16).
In one letter, Plaintiff states that his medication needs are
being "neglected." (Id., Ex. 13).  Further, Plaintiff has
submitted a copy of a letter from Attorney Bolton to Hale
County Circuit Court Judge Marvin Wiggins which requests that
Plaintiff be kept in WCJ pending the Court hearing the motion
on the sentence and requesting Judge Wiggins have his staff

further claims that he spoke with Defendant Arnold directly on one occasion, and during such discussion, he informed Arnold that Plaintiff was not receiving his medication from time to time, and asked Defendant Arnold to speak to Defendant Kennedy regarding the matter. (Doc. 32, Ex. 11). Plaintiff also contends that Defendant Kennedy was aware of his medication problem, as he spoke with her about it on numerous occasions. (Id., Ex. 12). Plaintiff has further avers that he submitted many medical requests claiming that he was not receiving his medications, and that not all of these requests were in his inmate records. (Id.).

Regarding Plaintiff's damages, in his affidavit of June 23, 2004, Plaintiff contends that, while incarcerated at WCJ, he suffered the following physical conditions:

> (A) Penetrating pain in lower back, abdomen, and legs; and
> (B) Dizziness, nausea, severe vomiting, diarrhea, dehydration, muscle weakness, fatigue, loss of appetite; and
> (C) Darkening of the skin in both exposed and nonexposed parts of the body; and
> (D) Difficulties sleeping and falling asleep, disturbances of concentration, reduction of perseverance, psychological disturbances, night mares.

---

talk to the Wilcox County Sheriff's Department regarding the importance of Plaintiff receiving his medications. (Id., Ex. 14). Finally, Plaintiff has submitted three affidavits of his own in support of the claims he makes in this action. (Id., Exs. 10, 11, and 12).

(Doc. 32, Ex. 10 at 2).  A thorough review of the journal
Plaintiff kept while incarcerated at WCJ, however, only
reveals a few general references to feeling bad.  (Doc. 32,
Ex. 18).  Specifically, on December 19, 1999, Plaintiff
claimed that he had been without his medicine for four days,
and that he was feeling "very bad" and "weak."(Id. at 15).
The following day, Plaintiff claims he was feeling worse.
(Id. at 16).  On June 21, 2000, Plaintiff references feeling
"rough."  (Id. at 39).  On June 23, 2000, Plaintiff writes
that he was hurting like he "had the flu," but that within a
couple of hours of receiving his medication, he felt better.
(Id. at 40).  Finally, on July 7, 2000, Plaintiff complains in
his journal of a neck ache, inability to sleep, and nausea.
(Id. at 43).  Further, Plaintiff's medical records from Dr.
Willie White reveal only two occasions on which Plaintiff
complained of neck pain after not receiving his medication.
(Doc. 22, Medical Records from Dr. Willie White, dated
10/20/99 and 7/7/00).  A review of Plaintiff's medical records
reveals no other complaints he lodged regarding any physical
ailments arising as a result of not receiving his medications
properly.  (Id.).

     According to Defendants, Plaintiff received his

prescription medications routinely, with few exceptions.
(Doc. 22 at 3-4, Affidavit of Gloria Kennedy at 2).
Defendant Kennedy, the Chief Jailer at WCJ, acknowledges that
Plaintiff did submit a few medical requests complaining that
he had not received his medication during his approximate 13
month confinement at WCJ.  Specifically, on August 8, 1999,
Plaintiff submitted a request to see a doctor because he had
not received his Prednisone.  Plaintiff was seen by Dr. Willie
White on August 13, 1999, per his request.  (Id., Affidavit of
Gloria Kennedy, and Plaintiff's Medical Records from Dr.
Willie White).  Additionally, on October 20, 1999, Plaintiff
complained that he was not getting enough Prednisone and
Florinef, and he was taken that same day to see Dr. White.
(Id.).  Last, on July 7, 2000, Plaintiff complained that he
had not received his Florinef and was taken that same day to
see Dr. White.  (Id.).  Defendant Kennedy avers that at no
time did she ever deny, delay or interfere with Plaintiff's
medical treatment including his receipt of prescription
medications.   (Doc. 22, Affidavit of Gloria Kennedy at 2).
Defendant Kennedy further contends that she never received any
information from any member of Plaintiff's family concerning
any alleged problem with Plaintiff's medications.  (Id.).

    According to Defendant Sheriff Arnold, he had no personal

participation or involvement in any decisions made or actions
taken with regard to Plaintiff's medical care while he was
incarcerated at WCJ.  (Doc. 22, Affidavit of Prince Arnold at
1).  Defendant Arnold does not recall receiving any complaints
regarding Plaintiff not receiving his medication, however, he
does recall speaking with Plaintiff's mother, who advised him
of Plaintiff's medical condition.  (Id. at 2).  According to
Defendant Arnold, it is the policy of the Wilcox County
Sheriff's Department to provide for the physical and emotional
well being of inmates, and such includes access to appropriate
health care service.  (Id.).  At WCJ, an inmate requesting
medical services is given a request for medical evaluation
form to complete.  Upon completion of the form, the inmate
gives the completed form to a correctional officer.  If the
request is stated to be an emergency, the chief jailer will
make arrangements for emergency treatment; however, if the
request is not an emergency, the inmate is placed on a sick
call list to be seen by the doctor at the next regularly
scheduled sick call.  (Id.).

   The record reflects that Plaintiff received medical
treatment from the time that he entered WCJ in February of
1999 until his departure on August 10, 2000.  (Doc. 22,
Plaintiff's Inmate Records and Medical Records from Dr. Willie

10

White; doc. 32, exs. 17 and 18).  The record further reflects that Plaintiff regularly received the medications of Florinef Acetate, Prednisone, Lotrel, and Diovan HCT.  (Doc. 22, CVS Pharmacy Records).  Additionally, Plaintiff's records from CVS Pharmacy reflect that on occasion, he was also prescribed Hydroxyzine HCL, Cephalexin, and Atuss DM, in addition to his regular medications. (Id.)

In connection with Plaintiff's claim that he has been denied medical care, he is seeking compensatory damages in the amount of $30,000.50 from each Defendant, punitive damages in the amount of $10,000.50 from each defendant, and reimbursement for all costs and expenses incurred as a result of this litigation. (Doc. 2 at 4).  Plaintiff further requests that he be awarded compensation for pro se legal services in the amount of fifty dollars per hour, plus a $1000 retainer fee, as well as for paralegal services in the amount of twenty-five dollars per hour, plus a $500 retainer fee. (Id.).  Plaintiff also seeks to have the Court issue bench warrants for the arrest and seizure of the Defendants in this action.  (Id.).

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The

<u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P</u>. 56(e); <u>see</u> <u>also</u> <u>Celotex Corp</u>., 477 U.S. at 325-27.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

12

colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Liberty Mut. Fire Ins. Co. v. Sahawneh, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (citing Anderson, 477 U.S. at 249-50).

### III. DISCUSSION

In this action, Plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994).

Plaintiff claims that Defendants violated his Eighth

13

Amendment right to be free from cruel and unusual punishment

by failing to provide proper medical care while Plaintiff was

incarcerated at WCJ.[7] (Doc. 2; doc. 32).  The Eighth Amendment

---

[7]Plaintiff does not specify whether he is suing Defendants
in their official or individual capacities or both.  Thus, the
Court will consider both.  Initially, the Court notes that
both Defendants are considered state officials.  "[A]n Alabama
sheriff acts exclusively for the state rather than the county
in operating a county jail." Turquitt v. Jefferson County, 137
F.3d 1285, 1288 (11th Cir.), cert. denied, 525 U.S. 874, 119 S.
Ct. 174, 142 L. Ed. 2d 142 (1998).  It is well settled in
this Circuit that Alabama sheriffs are executive officers of
the state and that a suit against a sheriff in his official
capacity is the equivalent of a suit against the state.  See
Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).
Further, Defendant Kennedy is employed by Sheriff Arnold at
WCJ, and thus represents the state in her duties at WCJ.  See
Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir.
1997)(holding that jailers are state officials entitled to the
same Eleventh Amendment immunity as the sheriff because they
are responsible to the sheriff for their performance of state
mandated duties.)

    As state officials, Defendants are absolutely immune from
suit for damages in their official capacities.  See Harbert
Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir.
1998)(state officials sued in their official capacities are
protected from suit for damages under the Eleventh Amendment).
Moreover, "[q]ualified immunity protects government officials
performing discretionary functions from suits in their
individual capacities unless their conduct violates 'clearly
established statutory or constitutional rights of which a
reasonable person would have known.'" Dalrymple v. Reno, 334
F.3d 991, 994 (11th Cir. 2003)(quoting Hope v. Pelzer, 536 U.S.
730, 739 (2002).  In determining whether qualified immunity
is appropriate in a given case, "[t]he court must first ask
the threshold question whether the facts alleged, taken in the
light most favorable to the plaintiffs, show that the
government official's conduct violated a constitutional
right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz,
533 U.S. 194, 201 (2001)).  Having determined herein that
Plaintiff's allegations do not establish a constitutional

provides that, "[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishments
inflicted." U.S. Const. amend. VIII. "The Eighth Amendment's
proscription of cruel and unusual punishments prohibits prison
officials from exhibiting deliberate indifference to
prisoners' serious medical needs." Campbell v. Sikes, 169
F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429
U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).
In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Court
delineated the objective and subjective portions of an Eighth
Amendment claim as follows:

> An Eighth Amendment claim is said to have
> two components, an objective component,
> which inquires whether the alleged
> wrongdoing was objectively harmful enough
> to establish a constitutional violation,
> and a subjective component, which inquires
> whether the officials acted with a
> sufficiently culpable state of mind.

25 F.3d at 983-84.

To meet the objective element required to demonstrate a
denial of medical care in violation of the Eighth Amendment, a
plaintiff must first demonstrate the objective existence of a
"serious medical need." Wilson v. Seiter, 501 U.S. 294, 300,
111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). "Because society

violation, "there is no necessity for further inquiries
concerning qualified immunity." Saucier, 533 U.S. at 201.

does not expect that prisoners will have unqualified access to
health care, deliberate indifference to medical needs amounts
to an Eighth Amendment violation only if those needs are
'serious.'" Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d
1176, 1186 (11th Cir. 1994) (quoting Hudson v. McMillian, 503
U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1991)).
"A 'serious' medical need is one that has been diagnosed by a
physician as mandating treatment or one that is so obvious
that even a lay person would easily recognize the necessity
for a doctor's attention." Id. at 1187 (quoting Laaman v.
Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).  As noted by
the Ninth Circuit, "[a] 'serious' medical need exists if the
failure to treat a prisoner's condition could result in
further significant injury or the 'unnecessary and wanton
infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059
(9th Cir. 1992) (quoting Estelle, 429 U.S. at 104, 97 S. Ct. at
291).

To prevail on this claim, Plaintiff must first prove that
his physical complaints amounted to a serious medical need.
It is undisputed that Plaintiff suffers from Addison's
Disease, a serious, potentially life threatening disease.
However, it is significant to note that Plaintiff has not
complained of the overall health care treatment he received

16

while at WCJ, merely the periodic days on which he did not

receive his medication.  The Second Circuit evaluated a

similar case involving an HIV-positive prisoner who complained

of missing his medication for a number of days on two

different occasions.  <u>Smith v. Carpenter</u>, 316 F.3d 178 (2nd

Cir. 2003).  The court noted that while there was no dispute

that HIV was a serious medical condition that requires medical

treatment, the prisoner's actual complaint was not that his

HIV condition was ignored, but instead that defendants failed

to provide his prescription medication during a seven day

period in one month and a five day period in another.  <u>Id.</u> at

185.  In making this distinction, the court explained that

> [w]hen the basis for a prisoner's Eighth
> Amendment claim is a temporary delay or
> interruption in the provision of otherwise
> adequate medical treatment, it is
> appropriate to focus on the challenged
> <u>delay</u> or <u>interruption</u> in treatment rather
> than the prisoner's <u>underlying medical
> condition</u> alone in analyzing whether the
> alleged deprivation is, in "objective
> terms, sufficiently serious," to support an
> Eighth Amendment claim.

<u>Id.</u> at 185-86 (emphasis in original).  Further, the Court

explained that in a case such as this, "where the prisoner is

receiving appropriate on-going treatment for his condition,

but, instead brings a narrower denial of medical care claim

based on a temporary delay or interruption in treatment, the

17

serious medical need inquiry can properly take into account
the severity of the temporary deprivation alleged by the
prisoner."[8]  Id. at 186.  In this action, Plaintiff's own
"Daily Diary" reflects that at the times when he missed his
medication, his symptoms amounted to nothing more than feeling
"bad," feeling like he had the flu, or complaining of neck
ache, nausea, and diarrhea.  (Doc. 32, Ex. 18, Daily Diary).
Plaintiff's diary entries are also consistent with Plaintiff's
medical records provided by Dr. Willie White.  (Doc. 22).
While the Court is mindful that Plaintiff's diagnosis of
Addison's Disease may constitute a "serious medical need," the
Court deems it reasonable to consider the "severity of the
temporary deprivation alleged by the prisoner," as opposed to
the severity of the disease itself in determining whether
Plaintiff has put forth a "serious medical need,"  since it is
undisputed that Plaintiff is not complaining of his overall
medical treatment for his condition.   See Smith, 316 F.3d 178.
Analyzing the foregoing evidence of Plaintiff's physical
complaints related to the untimely receipt of his medication
within the legal definition of a "serious medical need," the

_____

[8]In Smith v. Carpenter, 316 F.3d 178, 187 (2nd Cir. 2003),
the Court upheld a jury's determination that the HIV-positive
prisoner had not shown a "serious medical need," based upon
its consideration of the absence of "adverse medical effects"
which resulted from the delay or interruption in treatment.

undersigned finds that Plaintiff's claim that his nausea, neck pain, and generalized complaint of "feeling bad" constituted a serious medical need is dubious, at best.

Moreover, the Eleventh Circuit has held that "[a]n inmate who claims that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188. See also Canady v. Wilkinson, No. 03-3745, 90 Fed. Appx. 863, 865 (6th Cir. Feb. 2, 2004) (Court denied plaintiff's claim of cruel and unusual punishment based on delayed prescriptions, noting any gaps in treatment were mere negligence and that prisoner "did not place any verifying medical evidence in the record that showed a detrimental effect."); Rumsey v. Martin, No. 01-2167, 28 Fed. Appx. 500, 502 (6th Cir. Jan. 31, 2002) (Plaintiff claimed that delay by prison in dispensing his prescribed asthma inhalers violated the Constitution but court denied claim noting that plaintiff had not "submitted medical evidence which clearly show[ed] that his condition deteriorated because of a delay in filling his prescriptions."); and Williams v. Dallas County, No. 3-01-CV-0400-D, 2003 WL 21662823, *4 (N.D. Tex. July 14, 2003) ("Although the court agrees that Brown suffers from a serious

medical condition, there is no evidence that he has been
harmed by the eight-week delay in receiving his desired blood
pressure medication."). Plaintiff herein has not alleged,
much less offered, any verifying medical evidence indicating
any detrimental effect to his medical condition as a result of
the alleged isolated delays in the receipt of his medication
while incarcerated at WCJ. The allegations of physical injury
made by Plaintiff as a result of the periodic delay in
receiving medication amount to nothing more than de minimis
complaints. "The Constitution...does not provide an avenue of
redress for de minimis events in the life of an inmate." <u>Dean</u>
<u>v. Conley</u>, No. 00-6086, 20 Fed. Appx. 294, 296 (6th Cir.
September 17, 2001).

Assuming arguendo that Plaintiff has proven that his
symptoms presented a "serious medical need," or that this
Court were to consider the diagnosis of Addison's Disease the
"serious medical need," Plaintiff nevertheless fails to meet
the required subjective component of his medical care claim.
In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970, 128 L.
Ed. 2d 811 (1994), the United States Supreme Court set forth
the standard for analyzing the deliberate indifference
requirement:

> [A] prison official cannot be found liable
> under the Eighth Amendment for denying an

> inmate humane conditions of confinement
> unless the official <u>knows of and disregards
> an</u> <u>excessive risk</u> to inmate health or
> safety; the official must both be aware of
> facts from which the inference could be
> drawn that a substantial risk of serious
> harm exists, and he must also draw the
> inference. ... But an official's failure to
> alleviate a significant risk that he should
> have perceived but did not, while no cause
> for commendation, cannot under our cases be
> condemned as the infliction of punishment.

511 U.S. at 837-38, 114 S. Ct. at 1979 (emphasis added).

Furthermore, "the official may escape liability for known

risks 'if [he] responded reasonably to the risk even if the

harm ultimately was not averted.'" <u>Chandler v. Crosby</u>, 379

F.3d 1278, 1290 (11th Cir. 2004 ) (quoting <u>Farmer</u>, 511 U.S. at

844, 114 S. Ct. at 1982-83).

To meet the required subjective element in a medical care

case, a plaintiff must demonstrate "'deliberate indifference

to serious medical needs.'" <u>Hill</u>, 40 F.3d at 1186 (quoting

<u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. at 292).  This standard is

met upon a showing of a substantial risk of serious harm,

together with the "intentional refusal" to provide the medical

care in question.  <u>Hill</u>, 40 F.3d at 1186.  "'[A]n official

acts with deliberate indifference when he or she knows that an

inmate is in serious need of medical care, but he fails or

refuses to obtain medical treatment for the inmate.'"

<u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999)

21

(quoting Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425
(11th Cir. 1997)).  "'A defendant must purposefully ignore or
fail to respond to a prisoner's pain or possible medical need
in order for deliberate indifference to be established.'"
Hill, 40 F.3d at 1191 (emphasis in original) (quoting
McGuckin, 974 F.2d at 1060).  Deliberate indifference requires
conduct that is more than mere negligence.  Farrow v. West,
320 F.3d 1235, 1245 (11th Cir. 2003).

Plaintiff's claims against Defendants fail as he has
offered no evidence suggesting that these Defendants were
deliberately indifferent to his serious medical needs.  At
best, Plaintiff has put forth evidence of negligence on the
part of Defendants, as opposed to the required standard of
deliberate indifference.  The record reflects that Plaintiff's
prescribed health regimen included four prescription
medications which were to be taken several times each day, and
that following Plaintiff's first couple of days incarceration
at WCJ in February 1999, he properly received his medications
until approximately June 8, 1999.  (Doc. 32, Ex. 18, Daily
Diary and Medication Chart).  As best the Court can determine
from the record, from June 8, 1999, until August 10, 2000,
Plaintiff received his daily medications every day with the
exception of a total of 41 periodic days.  (Id.).  Based upon

22

Plaintiff's "Daily Diary" entries, it appears that Plaintiff would periodically miss a day or more of his medication near the time of the month the medication needed to be refilled. The longest consecutive period of time in which Plaintiff missed his Prednisone dosage was five days. (Id., Daily Diary at 36-39). The longest consecutive period of time in which Plaintiff was without his Florinef Acetate was four days. (Id., Daily Diary at 27-28). The reasons for the occasional delays in dispensing Plaintiff's medications, based upon a thorough review of the record including Plaintiff's own Daily Diary, appear to be that the medications needed to be refilled at the pharmacy on a monthly basis, or that Dr. White occasionally needed to renew the prescriptions. (Doc. 22, CVS Pharmacy Records, Medical Records of Dr. Willie White; doc. 32, ex. 18). At the time of the refill, Plaintiff would sometimes experience a delay in receiving his medication while WCJ staff retrieved the medication from the pharmacy. (Id.).

The record reflects that overall, the WCJ staff was attentive to Plaintiff, and that when Plaintiff requested to see a doctor, he was allowed to do so, often on the very same day. (Doc. 22, Inmate Records at 1-5; Medical Records from Dr. Willie White; doc. 32, ex. 18, Daily Diary). For instance, Plaintiff wrote the following in his diary on August

13, 1999:

> Barbra the jailer on duty came by after
> lunch and ask me if I still wanted to go to
> the Doctor.  I told her yes, and she made
> me a appointment for 2:00 p.m. with no
> trouble at all.  The white female deputy
> carried me to the doctor.  I told the
> doctor what had happened with my medicine,
> and what I needed which was more refills
> for my Prednisone and a shot of Decadron.
> I got the shot and he said I would have
> four refills.

(Doc. 32, ex. 18, Daily Diary at 7).  The records also
indicate that Plaintiff received prompt medical care whenever
it was requested.  Moreover, on August 2, 2000, Plaintiff
wrote the following: "[t]hey are getting my medication filled
more properly than any time of the time I've been here.
Whoever's doing this, I'm thankful to them."  (Doc. 32, Daily
Diary at 45).  While the record in this action indicates that
Defendants might have been somewhat negligent in keeping up
with the monthly refills of Plaintiff's four to six different
medications, the record also indicates that effort was made to
provide Plaintiff his medications in a proper manner.  "[W]hen
a prison inmate has received medical care, courts hesitate to
find an Eighth Amendment violation."  Waldrop v. Evans, 871
F.2d 1030, 1035 (11th Cir. 1989).

Plaintiff has simply failed to present any evidence or
allege any facts sufficient to show that, on the occasions

that his prescription medications were delayed, the delay was
anything but inadvertent. Plaintiff has not shown that
Defendants Arnold and Kennedy "purposefully ignored or failed
to respond" to Plaintiff's medical condition. Hill, 40 F.3d
at 1191 (quoting McGuckin, 974 F.2d at 1060). Further,
Plaintiff has not offered any evidence to establish intent or
"a sufficiently culpable state of mind" on the part of either
Arnold or Kennedy. See Wilson, 501 U.S. at 298, 111 S. Ct. at
2324. "'It is obduracy and wantonness, not inadvertence or
error in good faith' that violates the Eighth Amendment in
'supplying medical needs.'" Hill, 40 F.3d at 1191 (quoting
Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084,
89 L. Ed. 2d 251 (1986). Defendants' actions with regard to
Plaintiff in no way rise to the level of a constitutional
violation. See Ervin v. Busby, 992 F.2d 147, 150-51 (8th
Cir.) (per curiam) (although inmate was deprived of
prescription anti-depressant medication for approximately a
month, during which time he incited a riot, doctor testified
that suddenly stopping medication should not have caused undue
agitation; prison officials' negligence in not refilling
prescription was not deliberate indifference), cert. denied,
510 U.S. 879, 114 S. Ct. 220, 126 L. Ed. 2d 176 (1993).

Therefore, because Plaintiff has failed to show that

25

either Defendant was deliberately indifferent to his serious
medical  needs, Plaintiff cannot survive summary judgment on
his claims.

### IV. CONCLUSION

Based on the foregoing, the Court concludes that
Defendants Sheriff Prince Arnold and Chief Jailer Gloria
Kennedy are entitled to summary judgment in their favor on all
claims asserted against them by Plaintiff.  Accordingly, it is
recommended that Defendants' motion for summary judgment be
G**RANTED**, that Plaintiff's motion for summary judgment be
**DENIED**, that this action be **DISMISSED** with prejudice, and that
judgment be entered in favor of Defendant Prince Arnold and
Defendant Gloria Kennedy and against Plaintiff James E.
Williams, Jr. on all claims.

The attached sheet contains important information
regarding objections to this recommendation.

DONE this **26**th day of **September, 2005.**


                    /s/ Sonja F. Bivins
            UNITED STATES MAGISTRATE JUDGE


26

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party

planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.